13-2565-cr(L)
*United States v. Toscano et al*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of March, two thousand fifteen.

Present:
        GUIDO CALABRESI,
        PETER W. HALL,
        SUSAN L.CARNEY,
                *Circuit Judge*s,

_____

UNITED STATES OF AMERICA,

                *Appellee*,

        v.                                                    13-2565-cr(L)
                                                              13-2830-cr(C)
                                                              13-4255-cr(C)

CHRISTOPHER H. MONFORT, RICHARD E. RIEDMAN, AKA Eric,[1]

                *Defendants,*

ANTHONY TOSCANO, AKA Igor, TIMOTHY M. STONE, AKA Tim Bob, ANTHONY J. RUSSELL, AKA Toetag,

                *Defendants-Appellants*.

_____

[1]     The Clerk of Court is instructed to amend the caption in this case as shown here, in order to reflect defendant Richard E. Riedman's withdrawal of his appeal.

1

| For Appellee: | BRETT HARVEY and Stephan J. Baczynski, Assistant United States Attorneys, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, New York. |
| --- | --- |
| For Appellant Toscano: | DAVID R. MORABITO, East Rochester, New York. |
| For Appellant Russell: | JON P. GETZ, Muldoon Getz & Reston, Rochester, New York. |
| For Appellant Stone: | ROBERT W. WOOD, Rochester, New York. |

Appeal from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** and **REMANDED** in part, consistent with this summary order.

Defendants-appellants Anthony Toscano, Timothy Stone, and Anthony Russell appeal the sentences and judgments entered by the United States District Court for the Western District of New York. All charges relate to the theft of scrap steel traveling in interstate commerce from a railroad car ("YARR 164") located at a rail yard ("CSX yard") in Batavia, New York on the night of June 29-30, 2009. All three appellants challenge the sufficiency of the evidence supporting their convictions; Russell and Toscano challenge the amount of restitution the district court imposed; and Russell claims that the district court abused its discretion by admitting evidence related to earlier thefts that pertained solely to his co-defendants and by denying his motion to sever his trial. We assume the parties' familiarity with the underlying facts, the procedural history, the district court's rulings, and the parties' arguments on appeal.

Appellants were each convicted of conspiracy in violation of 18 U.S.C. § 371 (Count One) and theft from an interstate shipment in violation of 18 U.S.C. § 659 (Count Three), and

2

Stone—who was riding in the logging truck that was observed exiting the access road—was also convicted of entering YARR 164 with intent to commit larceny therein in violation of 18 U.S.C. § 2117 (Count Two). We evaluate sufficiency challenges *de novo*. *United States v. Jones*, 393 F.3d 107, 111 (2d Cir. 2004). In so doing, we "view the evidence presented in the light most favorable to the government, and we draw all reasonable inferences in its favor. Furthermore, we consider the evidence in its totality, not in isolation. . . ." *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008) (internal quotation omitted). We will not disturb the jury's verdict unless "the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013) (internal quotation omitted). A jury's verdict may rest on entirely circumstantial evidence. *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008). While the appellants' burden is heavy, it is not insurmountable. *Jones*, 393 F.3d at 111. If the evidence viewed in the light most favorable to the government gives "equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, . . . a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (internal quotation omitted).

We conclude that the government produced sufficient evidence to support the jury's guilty verdict with respect to all appellants as to all Counts charged. The jury had before it evidence that alleged co-conspirators Christopher Monfort and Toscano had, on three occasions during the two weeks leading up to the night in question, sold to ALPCO Recycling ("ALPCO") loads of "E bales" of scrap steel belonging to Ed Arnold Scrap ("EAS"). The government presented evidence that, several hours before the defendants' arrest, Monfort contacted ALPCO to arrange a sale of scrap steel. ALPCO reported this phone call to the Genesee County Sheriff's

3

Office, prompting the Sheriff's Office to set up surveillance at the CSX yard that evening. The CSX yard is unlit and situated in an isolated location off Route 98. Officer Welker, who participated in the surveillance, testified that as he was driving on Route 98 at approximately 1:00 a.m. on June 30, 2009, he spotted a red pickup truck on the road in front of him. Welker witnessed the pickup make a U-turn, travel southbound on Route 98, make a second U-turn, and park on the northbound shoulder just south of the entrance to an access road that led to the CSX yard. Welker then observed a logging truck pull out from the access road and drive northbound on Route 98. The red pickup truck then pulled out onto Route 98 behind the logging truck, and continued to follow it as it made two turns before both trucks were stopped at a police roadblock. Stone was riding as passenger in the logging truck, which Monfort was driving. Russell was driving the pickup truck, which he owned, with Toscano in the passenger seat. The logging truck was registered to Monfort and contained a number of steel bales. Welker identified them as the same bales he observed at the CSX yard several hours earlier. Each truck contained a Uniden brand two-way radio tuned to a frequency that enabled communication between them. The jury also heard testimony that on the night of June 29-30, YARR 164 was sitting in the CSX yard and contained a load of EAS's E bales that were en route to a purchaser in Pennsylvania. The engineer who moved YARR 164 to the CSX yard testified that as of 10:30 a.m. on June 29, YARR 164 was the only low-sided gondola car—which is the type of rail car usually used to transport bales of scrap steel—in the CSX yard, and that no other cars in the yard contained bales of scrap steel. An EAS employee testified that E bales produced by EAS have unique characteristics and are readily identifiable. The same employee testified that early on the morning of June 30, he was called to the Genesee County Sheriff's Office where he affirmatively identified a number of E bales located on the back of a logging truck as having been produced by

4

EAS. The government's theory at trial was that the defendants in the pickup were acting as a "lookout," while their alleged co-conspirators loaded the logging truck with E bales from YARR 164.

Appellants' primary argument is that the government failed to link the specific bales discovered in the logging truck to YARR 164, citing the absence of evidence that YARR 164 was actually missing bales after the alleged theft. As Stone asserts in his brief, the government's evidence permits two inferences: "that the bales of steel were stolen from car 164," or alternatively, "that the bales of scrap steel were stolen from another car at the CSX yard." Brief of Defendant-Appellant Timothy M. Stone 16. Although appellants are correct, their sufficiency challenge fails because, on review of a jury verdict of conviction, we must draw all reasonable inferences in the government's favor, *see Huezo*, 546 F.3d at 178. While we will reverse a judgment of conviction when the evidence, viewed in the light most favorable to the government, "gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence," *Glenn*, 312 F.3d at 70 (internal quotation omitted), here, the government's theory has far greater evidentiary support. Except for Welker's reference to railroad "cars" in the plural, which does not appear to have been explored or clarified on cross examination, appellants have proffered no evidence to support their theory that another rail car containing EAS's unique E bales may have been brought into the CSX yard between 10:30 a.m. and the time of the theft approximately fourteen hours later. Simply put, "the Government is not required to preclude every reasonable hypothesis which is consistent with innocence." *Ogando*, 547 F.3d at 107 (internal quotation omitted). The government's evidence is sufficient to support the jury's conviction of all three appellants on the conspiracy and theft charges, as well as its conviction of Stone on the illegal entry charge.

5

Russell's arguments related to the district court's denial of his motion to sever his trial and the court's admitting evidence related to his co-defendants' illicit sales of E bales taken from YARR 192 earlier in June of 2009 fare no better. We review a district court's admission of evidence for abuse of discretion, which requires a showing that the court "acted arbitrarily and irrationally." *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011) (internal quotation omitted). The court clearly instructed the jury that "testimony about incidents involving Christopher Monfort and Anthony Toscano and the sale of bales of scrap steel that occurred prior to June 29th, 2009," if credited, "may be considered only against Anthony Toscano, and must not be considered by you in any way against . . . Anthony Russell." App. 604. The court further instructed, in effect, that the testimony was admitted for a limited, contextual purpose, and must not be considered as evidence going to the crimes charged in the indictment. The court concluded with a reminder that the defendants were "on trial only for the crimes charged in the indictment and not for any other acts." App. 605. The court acted well within its discretion in admitting evidence of the events prior to June 29, 2009, and its clear instruction served as a prophylactic against any potential prejudice.

District judges enjoy broad discretion when ruling on motions to sever, and a district court's "exercise of that discretion is virtually unreviewable." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir 1998) (internal quotation omitted). We have repeatedly recognized a "particularly strong" preference for joint trials of defendants charged in the same indictment who stand accused of participating in a common plan or scheme. *Id.* Russell has failed to raise any meritorious claim of "prejudice so great as to deny him a fair trial." *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). Moreover, the court's prophylactic instruction was an adequate safeguard against any potential prejudice implicated by a joint trial.

6

The final issue raised on appeal pertains to the disparity in the amount of restitution imposed upon Russell and Toscano, $4,669.26 each, compared to the $3,069.28 imposed upon Stone. Russell and Toscano contend that the lower figure accurately reflects the losses to EAS caused by the theft from YARR 164, and that the difference between the two figures can be attributed to losses incurred from the E bales taken from YARR 192. The government concedes that restitution was improperly calculated, and our cases are clear that restitution may only be based on "loss caused by the specific conduct that is the basis of the offense of conviction," and not on "relevant conduct," even though such conduct may be properly included in offense level calculation under the Sentencing Guidelines. *United States v. Vilar*, 729 F.3d 62, 96-97 (2d Cir. 2013). We therefore vacate those portions of the judgments ordering restitution to be paid by Russell and Toscano, and remand to the district court for recalculation of restitution owed by Russell and Toscano limited to losses incurred as the result of the theft from YARR 164 on June 29-30, 2009.

We have considered appellants' remaining arguments and find them to be without merit. Accordingly, the portions of the judgments ordering restitution to be paid by Anthony Toscano and Anthony Russell are **VACATED** and **REMANDED** to the district court for further proceedings. The judgments entered by the district court are **AFFIRMED** in all other respects.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7