14-1994-pr
*Gonzalez v. United States*

In the

# United States Court of Appeals
## for the Second Circuit

---

AUGUST TERM 2014
No. 14-1994-pr

EFRAIN GONZALEZ, JR.,
*Petitioner-Appellant,*

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee.*

---

On Appeal from the United States District Court
for the Southern District of New York

---

SUBMITTED: JUNE 22, 2015
DECIDED: JULY 2, 2015

---

Before: CABRANES, POOLER, and CHIN, *Circuit Judges.*

---

This appeal presents an unsettled question regarding restitution orders and the one-year limitations period for a 28 U.S.C. § 2255 motion: Does the limitations period begin to run with an

order affirming a conviction and sentence but remanding for recalculation of restitution, or does it begin to run only after the district court enters a revised restitution order on remand?

We hold that the limitations period begins to run only when the revised restitution order becomes final. Accordingly, the May 19, 2014 order of the United States District Court for the Southern District of New York (William H. Pauley III, *Judge*) is **VACATED** and the cause is **REMANDED** for further proceedings consistent with this opinion.

---

> Efrain Gonzalez, Jr., *pro se*, Care of Federal Correctional Institution, Fort Dix, NJ, *Petitioner-Appellant.*
>
> Michael A. Levy, Assistant United States Attorney, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *Respondent-Appellee.*

---

PER CURIAM:

This appeal presents an unsettled question regarding restitution orders and the one-year limitations period for a 28 U.S.C. § 2255 motion: Does the limitations period begin to run with an order affirming a conviction and sentence but remanding for

recalculation of restitution, or does it begin to run only after the district court enters a revised restitution order on remand?

We hold that the limitations period begins to run only when the revised restitution order becomes final. Accordingly, the May 19, 2014 order of the United States District Court for the Southern District of New York (William H. Pauley III, *Judge*) is **VACATED** and the cause is **REMANDED** for further proceedings consistent with this opinion.

## BACKGROUND

*Pro se* appellant Efrain Gonzalez, Jr. is a former New York State senator who represented a district in the Bronx. He also served on the board of the West Bronx Neighborhood Association ("WBNA"), a Bronx charity. Gonzalez was accused of using WBNA funds for his personal use, including vacations, rent, jewelry, and baseball tickets. On May 8, 2009, Gonzalez pleaded guilty to two counts of fraud and two conspiracy counts. On May 25, 2010, the District Court sentenced him principally to seven years' imprisonment and ordered restitution, with the exact amount to be determined at a later date by the District Court. Gonzalez filed a timely notice of appeal on June 2, 2010. After receiving further submissions from the parties on the restitution question, the District Court, on August 23, 2010, entered a separate order directing Gonzalez to pay $122,775 in restitution to WBNA's donors.

On August 27, 2010, Gonzalez amended his notice of appeal to challenge the restitution order entered four days earlier. We affirmed the conviction and sentence, but vacated the restitution order.[1] We determined that the restitution amount of $122,775 overstated the losses to WBNA's donors because the donors had received some value for their donations, and we remanded the cause so that the District Court could determine the true extent of the victims' losses and order restitution in that revised amount.[2] Our decision was issued on July 22, 2011 (the "July 2011 Decision"). Gonzalez did not seek a writ of certiorari.

On remand, the parties agreed to a 25 percent discount to account for the benefits WBNA's donors received. On March 6, 2013, the District Court entered a revised order requiring Gonzalez to pay $92,081.25 in restitution (the "March 2013 Order"). He did not appeal that order. Instead, on September 4, 2013, Gonzalez filed a § 2255 motion asserting that the Government had threatened a witness to prevent him from testifying for Gonzalez. The District Court dismissed the § 2255 motion as time barred under the one-year limitations period set out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2255(f). Specifically, the District Court rejected Gonzalez's argument that the AEDPA limitations period began after the March 2013 Order—when the District Court's revised restitution order was

---

[1] *United States v. Gonzalez*, 647 F.3d 41, 43-44 (2d Cir. 2011).

[2] *Id.* at 65-67.

4

entered—and instead held that it started to run on October 20, 2011, 90 days[3] after the July 2011 Decision, when this Court affirmed his conviction.

This appeal followed. We granted a certificate of appealability on the issue of "whether the district court erred in determining that [Gonzalez's] 28 U.S.C. § 2255 motion was untimely where it was filed within one year of the revised restitution order entered in March 2013."

## DISCUSSION

We consider *de novo* questions arising under AEDPA's requirement that a § 2255 motion be filed within one year of "the date on which the judgment of conviction becomes final."[4]

If the AEDPA clock started to run when this Court affirmed the conviction and the non-restitution aspects of the sentence in the July 2011 Decision, then Gonzalez's § 2255 motion of September 4, 2013 would be time barred. Where a defendant does not seek Supreme Court review, a conviction becomes final when the time to seek such review expires, 90 days from the order affirming the

---

[3] *See Clay v. United States*, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."); Sup. Ct. R. 13(1) (establishing ninety-day period for filing petition for writ of certiorari).

[4] 28 U.S.C. § 2255(f)(1); *see Scanio v. United States*, 37 F.3d 858, 859-860 (2d Cir. 1994).

conviction.[5]    Here, the time to seek a writ of certiorari expired on October 20, 2011, 90 days after the July 2011 Decision.  If Gonzalez's conviction became final then—as the District Court held—the AEDPA limitations period ended on October 22, 2012 and his § 2255 motion filed in September 2013 was untimely.

Gonzalez urges us to conclude that the AEDPA limitations period began to run only with the March 2013 Order.  More precisely, under this position, the limitations period began to run on March 20, 2013, when the time for Gonzalez to file a direct appeal of the revised restitution order expired.[6]  We agree for three reasons.

## I.    Amended Judgments

First, where a criminal judgment is vacated and remanded for substantive proceedings, the amended judgment is attackable in habeas proceedings.  This posture often arises in the context of successive habeas petitions or motions.[7]  In *Magwood v. Patterson* the

---

[5] *Clay*, 537 U.S. at 524-25.

[6] *See Moshier v. United* States, 402 F.3d 116, 118 (2d Cir. 2005) ("[A]n unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."); Fed. R. App. P. 4(b)(1) (absent cross-appeal, criminal defendant has 14 days to appeal from "the entry of either the judgment or the order being appealed.").

[7] Once a 28 U.S.C. § 2254 petition or § 2255 motion is decided on the merits, AEDPA places restrictions on the filing of additional petitions or motions attacking the same conviction, *i.e.*, second or successive petitions or motions.  That is, unless a habeas petitioner or movant relies upon a new rule of constitutional law made retroactive by the Supreme Court or

District Court conditionally granted a 28 U.S.C. § 2254 petition and ordered that the petitioner be released or re-sentenced by the state authorities.[8] After re-sentencing by the state trial court, the petitioner filed a second § 2254 petition challenging the new sentence.[9] The Supreme Court held that the second petition was not a second or "successive" petition within the meaning of AEDPA because the petitioner was challenging a new judgment.[10] We have applied *Magwood* to hold that a § 2255 motion challenging an amended judgment of conviction of a federal trial court—entered after a previous § 2255 motion was granted and the prior judgment of conviction was vacated—did not constitute a successive § 2255 motion because the second § 2255 motion challenged a new judgment.[11]

---

newly discovered evidence of actual innocence, "[n]o circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus." 28 U.S.C. § 2244(a), (b)(2); *see also id.* § 2255(h) (listing exceptions to successive restrictions).

[8] 561 U.S. 320 (2010).

[9] *Id.* at 323.

[10] *Id.* at 323-24.

[11] *See Johnson v. United States*, 623 F.3d 41, 44-46 (2d Cir. 2010); *Marmolejos v. United States*, __ F.3d __, 2015 WL 3499660, at *4 (2d Cir. June 4, 2015) ("*Magwood* and *Johnson* . . . stand for the principle that when a judgment is entered on account of new substantive proceedings involving

7

Other circuits have applied this rule in the context of AEDPA time limitations. In *United States v. Colvin*, the Ninth Circuit vacated one count of a conviction on direct appeal and remanded with instructions that the District Court strike that count and reduce the special assessment.[12] The defendant's § 2255 motion was filed within one year of that revised judgment of the federal trial court, but more than two years after the Ninth Circuit's order affirming in part and vacating in part the original judgment. The Ninth Circuit held that the AEDPA clock began to run with the revised judgment, and the § 2255 motion was therefore timely. The Court of Appeals reasoned that criminal proceedings in a district court are not complete until the availability of a direct appeal is exhausted, and, in the case before them, a direct appeal could have been taken from the revised judgment.[13] Similarly, in *United States v. Dodson*, the Fourth Circuit held that the AEDPA clock began to run after the District Court on remand held a hearing and re-sentenced the defendant.[14] The *Dodson* panel, however, noted that a remand for merely

---

reconsideration of either the defendant's guilt or his appropriate punishment, it is a new judgment for purposes of AEDPA."); *see also Urinyi v. United States*, 607 F.3d 318, 321 (2d Cir. 2010) (holding, pre-*Magwood*, that where a first § 2255 motion was granted so movant could file a direct appeal, the second § 2255 motion was not a successive motion under AEDPA).

[12] 204 F.3d 1221, 1222 (9th Cir. 2000).

[13] *Id.* at 1224-26.

[14] 291 F.3d 268, 274-76 (4th Cir. 2002).

ministerial purposes would not have rendered the original judgment of conviction non-final.

We applied a similar rule in *Burwell v. United States*.[15] There, we held that where one count of conviction was vacated but the life sentence remained intact, and the District Court was faced on remand with only the ministerial task of entering a judgment without the vacated count, for purposes of the AEDPA limitations period the conviction had become final with the original judgment.[16] Importantly, we distinguished between cases where a "remand was strictly ministerial in that it required a routine, nondiscretionary act by the district court that could not have been appealed on any valid ground," and cases where "our mandate left the district court the authority on remand to entertain the new arguments [defendant] advanced."[17]

The rule drawn from cases such as *Dodson* and *Burwell* is this: Where a conviction is vacated and the cause is remanded for substantive proceedings, the new judgment is subject to renewed collateral attack under AEDPA. In contrast, where a trial court has only the ministerial task of entering a new judgment, the original judgment is the relevant judgment for habeas purposes.

---

[15] 467 F.3d 160 (2d Cir. 2006).

[16] *Id.* at 165-67.

[17] *Id.* at 161.

Applying that rule here, the finality of the March 2013 Order—not that of the July 2011 Decision—started the AEDPA clock. Restitution is a serious component of criminal punishment,[18] and calculating the restitution amount is hardly ministerial. Allowing a judgment to be final for AEDPA purposes—while the restitution amount remains wholly uncertain—runs counter to the explicit differentiation between substantive and ministerial proceedings articulated in these cases. In the instant case, the District Court was required to re-calculate the restitution order— rather than merely enter a new judgment—following substantive communication between the parties and between the parties and the Court.[19] Indeed, the District Court eventually entered the revised restitution order—which cut the restitution amount by over $30,000—only after the parties had agreed to a 25 percent discount.

## II.    Finality

Second, a review of the law of finality in the context of restitution orders compels the conclusion that Gonzalez's conviction was not final for AEDPA purposes until the March 2013 Order. "Finality is variously defined; like many legal terms, its precise meaning depends on context."[20] For purposes of a direct criminal

---

[18] *See Pasquantino v. United States,* 544 U.S. 349, 365 (2005) ("The purpose of awarding restitution . . . is . . . to mete out appropriate criminal punishment for . . . conduct.").

[19] *Gonzalez*, 647 F.3d at 66-67.

[20] *Clay*, 537 U.S. at 527.

appeal, "a federal judgment becomes final for appellate review and claim preclusion purposes when the district court disassociates itself from the case, leaving nothing to be done at the court of first instance save execution of the judgment."[21]

A criminal judgment containing a restitution order is a final judgment for the purposes of a direct appeal.[22] It is less clear whether a criminal judgment that imposes restitution but leaves the amount to be determined constitutes a final judgment, even for purposes of direct appeal. The Supreme Court, in *Dolan v. United States*, expressly declined to decide the question.[23] However, the Court noted that it "makes sense" to allow immediate appeal of a judgment of conviction that does not impose restitution; the defendant would be free to appeal the restitution order separately and the two appeals (if they are concurrent) can be, and often are, consolidated.[24]

---

[21] *Id.*; *see also Deal v. United States*, 508 U.S. 129, 132 (1993) ("A judgment of conviction includes both the adjudication of guilt and the sentence.").

[22] *See, e.g., United States v. Certified Envtl. Serv., Inc.*, 753 F.3d 72, 99-102 (2d Cir. 2014) (reviewing restitution order as part of appeal from a criminal judgment); *see also* 18 U.S.C. § 3664(o) ("A sentence that imposes an order of restitution is a final judgment.").

[23] 560 U.S. 605, 618 (2010).

[24] *Id.* at 617-18.

The Supreme Court's decision in *Corey v. United States* supports the conclusion that while the initial judgment is sufficiently final for appeal, an appeal could also be pursued following entry of the restitution order.[25] Indeed, the Eleventh Circuit, in *United States v. Muzio,* relied on *Corey* to hold that a judgment imposing a sentence without setting restitution is sufficiently final as to be immediately appealable, but an appeal also could be taken following entry of the subsequent restitution order.[26]

In essence, *Corey* and *Muzio* allow defendants two opportunities to appeal: from an initial sentence, even if some aspects of the sentence are not final; and from the final order disposing of the case in the district court. The same rule should apply here. Gonzalez could have filed a § 2255 motion after the July 2011 Decision affirming his conviction and the non-restitution aspects of the sentence. However, he was also free to await the conclusion of the criminal proceedings—after the March 2013 Order—before deciding whether to file a § 2255 motion and deciding what claims to include in the motion.

---

[25] *375 U.S. 169, 174-75 (1963) (holding that where district court committed defendant to custody but held off on imposing final sentence, defendant could have appealed from initial imposition, but the appeal following final order imposing full sentence was also timely).

[26] 757 F.3d 1243, 1249-50 (11th Cir. 2014).

## III. The Nature of Section 2255 Proceedings

Third, the nature of § 2255 proceedings further supports the conclusion that Gonzalez's criminal judgment was not final for § 2255 purposes until the District Court revised the restitution amount. Despite the Government's argument to the contrary, Gonzalez could have challenged the revised restitution order in a § 2255 motion. In *Kaminski v. United States*, we held that a § 2255 motion may not attack the non-custodial aspects of a sentence.[27] However, *Kaminski* notes that "we have not as yet foreclosed the possibility that a restitution order might entail a sufficiently severe restraint on liberty, not shared by the public at large, as to amount to a form of custody."[28] *Kaminski* limits any § 2255 challenge to restitution orders to circumstances where the restitution order amounts to a severe restraint on liberty. While that will likely be a rare situation, it cannot be known whether restitution will constrain a defendant's liberty until the restitution amount and terms are set. Accordingly, where restitution is unsettled at the time of the Court of Appeals decision to remand, a defendant may wait until a final restitution order is entered by the District Court (including the conclusion of any direct appeal of the revised amount) before filing a § 2255 motion.

It bears underscoring that our ruling that the AEDPA limitations period does not start until after the completion of

---

[27] 339 F.3d 84, 87-89 (2d Cir. 2003).

[28] *Id.* at 87.

13

substantive proceedings on remand does not preclude a movant from filing a § 2255 motion before a final restitution order is entered. Although we discourage "piecemeal" § 2255 litigation, and have expressed a preference for the submission of a single § 2255 motion,[29] the rule against considering a § 2255 motion while a direct appeal is pending (an analogous situation) is not a jurisdictional bar. "Any concern over such a practice is one of judicial economy and the concern that the results on direct appeal may make the district court's efforts on the § 2255 motion a nullity."[30] Further, the fact that AEDPA discourages the filing of more than one § 2255 motion through the restrictions placed on second or successive motions, 28 U.S.C. § 2255(h), supports the conclusion that all challenges to a conviction and sentence can also be brought in a single § 2255 motion—after the final restitution order is entered.

If this were not the rule, situations could arise where defendants could not collaterally attack an order of restitution that severely restrained their liberty. For example, if Gonzalez had filed a § 2255 motion attacking only his conviction and sentence of imprisonment, and then two years later, the District Court imposed restitution that amounted to a "severe restraint on liberty" such that it could be challenged in a § 2255 motion, *see Kaminski*, 339 F.3d at

---

[29] *Ching v. United States*, 298 F.3d 174, 179 (2d Cir. 2002) ("Courts are not obliged to entertain needless or piecemeal litigation; nor should they adjudicate a motion or petition whose purpose is to vex, harass or delay.").

[30] *United States v. Outen*, 286 F.3d 622, 632 (2d Cir. 2002).

87, he may have had no recourse beyond direct appeal (which may not have been sufficient if the restitution order was tainted by ineffective assistance, Government misconduct, or other error that cannot be challenged on direct appeal).[31]

## IV. Remaining Arguments

The Government argues that starting the AEDPA clock only when the revised restitution order becomes final undermines the finality of convictions and will cause confusion among litigants. While the concerns are noted, they are not, in our view, supported by the reality of the process. We have identified only 22 cases (other

---

[31] Theoretically, the existence of the new restitution order may have saved any second § 2255 motion attacking that order from being deemed "successive." *See Johnson*, 623 F.3d at 44-46 (second § 2255 motion challenging revised judgment was not successive). Gonzalez also might have had the option of filing a 28 U.S.C. § 2241 petition if his collateral attack on the restitution order dealt with the execution of the order, rather than its imposition. *Adams v. United States*, 372 F.3d 132, 135 (2d Cir. 2004) ("Section 2241 . . . is the proper means to challenge the *execution* of a sentence."). Further, dicta from *Kaminski* suggests that he could have used a *coram nobis* petition, under the terms of the All Writs Act, 28 U.S.C. § 1651(a), as a collateral attack on the revised restitution order. 339 F.3d at 89-91. These options—coupled with a rule that even though a potentially significant part of a defendant's punishment (*i.e.*, the restitution amount) is still unsettled, the conviction is final and the habeas clock has begun ticking—might be confusing to a *pro se* litigant. The bright-line rule we now establish—that the litigant may wait until the substantive proceedings are completed in the district court before collaterally attacking his conviction—better serves *pro se* litigants while adhering to AEDPA's temporal restrictions on § 2255 motions.

than the instant case) dating from 2005 until the present in which this Court has vacated a restitution order but left the conviction wholly or largely undisturbed.[32] We decided more than 5,000 criminal appeals over roughly the same period.[33] Thus, only in a very small number of cases will the timing of a § 2255 motion possibly be affected by a vacated restitution order.

---

[32] *See United States v. Lundquist*, 731 F.3d 124 (2d Cir. 2013) *vacated* 134 S. Ct. 1940 (2014) (mem.); *United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013); *United States v. Desnoyers*, 708 F.3d 378 (2d Cir. 2013); *United States v. Lacey*, 699 F.3d 710 (2d Cir. 2012); *United States v. Archer*, 671 F.3d 149 (2d Cir. 2011); *United States v. Bengis*, 631 F.3d 33 (2d Cir. 2011); *United States v. Leonard*, 529 F.3d 83 (2d Cir. 2008); *United States v. Klein*, 476 F.3d 111 (2d Cir. 2007); *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006); *see also United States v. Monfort*, __F. App'x __, 2015 WL 1294926 (2d Cir. March 24, 2015); *United States v. Clark*, 593 F. App'x 53 (2d Cir. 2014); *United States v. Lochard*, 555 F. App'x 94 (2d Cir. 2014); *United States v. Wee*, 513 F. App'x 28 (2d Cir. 2013); *United States v. Schwamborn*, 467 F. App'x 35 (2d Cir. 2012); *United States v. Archer*, 432 F. App'x 43 (2d Cir. 2011); *United States v. Drayer*, 364 F. App'x 716 (2d Cir. 2010); *United States v. Mammedov*, 304 F. App'x 922 (2d Cir. 2008); *United States v. Rammelkamp*, 270 F. App'x 35 (2d Cir. 2008); *United States v. Rodriguez*, 260 F. App'x 414 (2d Cir. 2008); *United States v. McIntyre*, 207 F. App'x 71 (2d Cir. 2006); *United States v. Lisa*, 152 F. App'x 85 (2d Cir. 2005); *United States v. Fleischer*, 120 F. App'x 865 (2d Cir. 2005).

[33] This number is taken from the Administrative Office of the U.S. Courts, which issues yearly reports on judicial caseloads. The reports are available on the U.S. Courts web site at http://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics.

The Government draws to our attention a single example of post-vacatur restitution proceedings dragging on for a number of years.[34] However, the Mandatory Victims Restitution Act (the statute regulating the imposition of restitution) provides that restitution proceedings should take place within 90 days of the judgment.[35] The vast majority of the time, then, restitution will have been decided before a direct appeal is concluded. It should thus be the rare circumstance where the restitution proceedings outlive the appeal.

## CONCLUSION

To summarize: We hold that (1) a conviction is not final for AEDPA purposes as long as substantive restitution proceedings are ongoing; (2) where this Court vacates a restitution order and remands for further proceedings to recalculate the restitution amount, the AEDPA clock does not start to run until the restitution order becomes final; and (3) a litigant may wait—but is not required to wait—until the substantive proceedings are completed before collaterally attacking his conviction.

---

[34] Appellee's Br. at 20 (citing *United States v. Catoggio*, 698 F.3d 64 (2d Cir. 2012), where restitution was initially imposed in 2001, vacated, and the appeal from the revised restitution order was not decided until 2012).

[35] 18 U.S.C. § 3664(d)(5).

For the reasons set forth above, we **VACATE** the District Court's May 19, 2014, order and **REMAND** for further proceedings consistent with this opinion.