# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2017
_____

Montez Terriel Lee, Jr.

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 14, 2025
Filed: August 8, 2025

_____

Before BENTON, KELLY, and GRASZ, Circuit Judges.

_____

KELLY, Circuit Judge.

Montez Lee, Jr., pleaded guilty to federal arson and was sentenced to 120 months in prison. His initial judgment deferred a determination of restitution, and after several months, the district court amended Lee's judgment to include restitution in the amount of $842. When Lee filed a motion to vacate his sentence one year later, the district court dismissed it as time barred. See 28 U.S.C. § 2255(f). The district court concluded that the one-year limitations period applicable to Lee's claim was

triggered by his initial judgment, not the amended judgment adding restitution, and as a result, Lee's § 2255 motion came too late. We granted a certificate of appealability, and we reverse and remand.

I.

On May 28, 2020, during a protest in Minneapolis arising out of the murder of George Floyd, Lee burned down a Max It Pawn Shop. Lee and some of his friends entered the shop, which had already been looted, and Lee lit the building on fire. Two months later, law enforcement found the body of a man named O.L.S. in the charred rubble.

Lee was charged with arson on property used in interstate commerce, in violation of 18 U.S.C. § 844(i), and he pleaded guilty in July 2021. As his sentencing approached, the parties at first prepared to dispute whether Lee's arson caused O.L.S.'s death and, in turn, whether he would receive a 14-level cross-reference enhancement under the United States Sentencing Guidelines. See USSG §§ 2K1.4(c)(1), 2A1.2. However, just days before the sentencing hearing, Lee's attorney changed course, stipulating that the enhancement applied.

Lee was sentenced on January 14, 2022. The district court applied the cross-reference, varied downward from a Guidelines range of 235 to 240 months, and sentenced Lee to a 120-month term of imprisonment. The district court also noted that restitution was mandatory, see 18 U.S.C. § 3663A, but that it would be imposed at a later date because no victim had yet requested it, see 18 U.S.C. § 3664(d)(5) (providing 90-day period for victims' losses to be determined for restitution purposes). In response, the government indicated that O.L.S.'s family would be requesting $842 and asked for one week for the parties to "submit . . . documents and get this resolved." The district court agreed to "hold the matter open" for two weeks "and . . . not finalize that issue" until the restitution amount had been confirmed.

On January 19, 2022, an initial judgment was entered against Lee, explicitly deferring a "determination of restitution . . . until January 28, 2022." A few days later, the parties filed a joint motion noting that "[t]he Defendant has agreed to pay restitution in the amount of $842." But this was not reflected in Lee's sentence until April 13, 2022, when the district court entered an amended judgment adding the restitution obligation.

Lee did not appeal either iteration of his judgment. But on April 27, 2023, one year and fourteen days after the amended judgment issued in his case, Lee filed a motion to vacate his sentence under 28 U.S.C. § 2255. Lee alleged ineffective assistance of counsel—namely, that his lawyer had stipulated to the cross-reference enhancement without Lee's consent, and despite knowing of evidence that O.L.S. had not been killed by the fire Lee started.

On the government's motion, the district court dismissed Lee's motion. The district court concluded that the statute of limitations began to run on Lee's § 2255 motion two weeks after the imposition of Lee's initial deferred-restitution judgment, and thus his conviction became final on February 2, 2023. To the district court, the fact that Lee's judgment was amended several months later to add restitution was of no matter, because "[f]or the purposes of [28 U.S.C. §] 2255(f)(1), the triggering event is the sentencing judgment, not the subsequent amended judgment ordering restitution."

The district court denied Lee's requests for reconsideration and for a certificate of appealability. However, we granted a certificate of appealability to address whether Lee's amended judgment affected the beginning of the limitations period for his § 2255 claim. Our review is de novo. Odie v. United States, 42 F.4th 940, 944 (8th Cir. 2022).

II.

A.

Section 2255 imposes "[a] 1-year period of limitation . . . to a motion under this section." 28 U.S.C. § 2255(f). The period runs "from the latest of" a series of events, including, as relevant here, "the date on which the judgment of conviction becomes final." Id. § 2255(f)(1). Because "in a criminal case . . . . [t]he sentence is the judgment," the federal postconviction "limitations period d[oes] not begin until both [the] conviction *and* sentence 'bec[o]me final.'" Burton v. Stewart, 549 U.S. 147, 156–57 (2007) (first quoting Berman v. United States, 302 U.S. 211, 212 (1937); and then quoting 28 U.S.C. § 2244(d)(1)(A)).

"Finality is variously defined; like many legal terms, its precise meaning depends on context." Clay v. United States, 537 U.S. 522, 527 (2003). In the "context [of] postconviction relief," the Supreme Court has defined finality as the conclusion of the availability of direct review. Id.; see also Burton, 549 U.S. at 156 (defining finality in the context of federal postconviction relief as "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" (quoting 28 U.S.C. § 2244(d)(1)(A))).[1] A defendant must file a notice of appeal of a criminal judgment within fourteen days of its entry, Fed. R. App. P. 4(b)(1)(A)(i), and Lee filed his § 2255 motion one year and fourteen days after his amended judgment adding restitution was entered. Accordingly, determining which judgment in Lee's case constituted "the [final] judgment of conviction" under § 2255(f)(1) requires asking which judgment marked the date on which Lee's sentence became final and the time to seek direct review of his underlying conviction expired.

---

[1]While separate statutes govern a one-year limitations period for seeking postconviction relief from state versus federal convictions, compare 28 U.S.C. § 2244(d)(1), with 28 U.S.C. § 2255(f)(1), the Supreme Court has adopted a "uniform federal rule" when interpreting their definitions of finality. Clay, 537 U.S. at 530–32.

Lee argues that his sentence was incomplete until the district court imposed a specific restitution obligation, and thus his judgment was not "final" within § 2255(f)(1)'s meaning until its amendment in April 2022. In turn, the government argues that any addition of restitution was separate from and immaterial to the finality of the judgment of conviction in Lee's case, so it should not influence § 2255(f)'s limitations period. These competing views are reflected in a split among our sister circuits on this issue. Compare United States v. Anthony, 25 F.4th 792, 799 (10th Cir. 2022) (concluding that "restitution . . . is necessarily part of the judgment of conviction for § 2255 purposes" and that "a judgment of conviction becomes final for § 2255 limitations purposes when there is no further avenue for direct appeal of any portion of the sentence, including restitution"), and Gonzalez v. United States, 792 F.3d 232, 239 (2d Cir. 2015) (per curiam) (holding that "the AEDPA clock does not start to run until the restitution order becomes final"), with United States v. Gilbert, 807 F.3d 1197, 1200 (9th Cir. 2015) (holding that § 2255's limitations period is triggered when the time expires to directly appeal an initial "sentence of incarceration coupled with an unspecified amount of restitution").

In line with the Second and Tenth Circuits, we conclude that Lee's judgment of conviction only became final for purposes of § 2255's statute of limitations once his judgment was amended to add restitution. The parties do not dispute—and we agree—that restitution is part of a defendant's criminal sentence. See Manrique v. United States, 581 U.S. 116, 118 (2017) ("Sentencing courts are required to impose restitution *as part of the sentence* for specified crimes." (emphasis added)); Dyab v. United States, 855 F.3d 919, 922 (8th Cir. 2017) (discussing "the restitution *portion* of [a defendant's] sentence" (emphasis added)). Indeed, the Supreme Court has emphasized that "[b]y deferring restitution, the court is *declining* to announce a sentence." Manrique, 581 U.S. at 124. Because the "sentence is the judgment" for purposes of finality in federal postconviction proceedings, Burton, 549 U.S. at 156 (quoting Berman, 302 U.S. at 212), the natural conclusion is that Lee's judgment

was incomplete—and thus not "the . . . final" judgment under § 2255(f)(1)—until it was amended to include the restitution part of his sentence.[2]

Likewise, it was not until after Lee's judgment was amended that he lost the ability to directly appeal his underlying conviction. This conclusion follows from the Supreme Court's decisions in Corey v. United States, 375 U.S. 169 (1963) and Manrique. Corey concerned a criminal statute[3] that at the time allowed the sentencing court to first commit a defendant to the "maximum sentence of imprisonment prescribed by law" and then revisit that sentence months later to determine whether to change it. Corey, 375 U.S. at 171–72 (citation omitted). There, the Court held that the initial judgment was immediately appealable if the defendant so chose, but that the defendant could *instead* choose to wait to take an appeal until the court revisited his sentence. Id. at 174–76. The Court acknowledged that the first sentence was "freighted with sufficiently substantial indicia of finality to support an appeal." Id. at 175. But "the fact remain[ed] that the proceedings in the trial court [were] not actually terminated until after the . . . final sentence." Id. The Court stressed that there were practical reasons a defendant might want to wait until a final sentence had been imposed before challenging his conviction—including the possibility that "the trial court's knowledge [of] an appeal . . . might adversely influence the court's discretion in imposing final sentence." Id. Corey held that "[l]ong-accepted and conventional principles of federal appellate procedure require recognition of the defendant's right to await the imposition of final sentence before seeking review of the conviction." Id. at 176.

In Manrique—a case about deferred restitution—the Supreme Court expressly left Corey's holding undisturbed. There, the Court held that an initial judgment

---

[2]While not dispositive, it is telling that Lee's initial judgment explicitly announced its incompleteness, claiming that "[t]he determination of restitution is deferred," and that "[a]n amended judgment in a criminal case . . . will be entered after such determination."

[3]See 18 U.S.C. § 4208(b) (1958) (repealed 1987).

deferring restitution was itself directly appealable, but was nonetheless insufficient to "invoke appellate review of [a] later-determined restitution amount." Id. at 118, 120–23. The Supreme Court concluded that "deferred restitution cases involve two appealable judgments, not one." Id. at 123. Thus, as a "mandatory claim-processing rule," a defendant who had appealed the initial judgment to challenge his conviction would need to file a second appeal to challenge any restitution added in an amended judgment after the first appeal. Id. at 122–23. Importantly, however, in rejecting the idea that an *initial* appeal of a deferred-restitution judgment could "spring forward," the Supreme Court clarified that it "d[id] not intend to call into question th[e] . . . decision in Corey . . . holding that a defendant may challenge his conviction after a single notice of appeal filed from a *final* sentence imposed under [18 U.S.C.] § 4208(b)." Id. at 123 n.* (emphasis added).

Together, Corey and Manrique instruct that Lee could have waited to appeal his conviction (and custodial sentence) until after his amended judgment was filed. Corey involved a specific criminal statute not at issue here, but Corey's logic, as re-articulated in Manrique, applies equally to deferred-restitution cases. Manrique clarified that in deferred-restitution cases, "[b]y deferring restitution, the court is *declining* to announce a sentence." Id. at 124. In other words, when the district court defers restitution, "the fact remains that the proceedings in the trial court [have] not actually terminated." See Corey, 375 U.S. at 175. Accordingly, consistent with "[l]ong-accepted and conventional principles of federal appellate procedure," a defendant with a deferred-restitution judgment may choose to wait until "the imposition of final sentence"—here, via the addition of restitution—"before seeking [direct] review of the conviction."[4] Id. at 176.

---

[4]Indeed, the dissent in Manrique appeared to assume—without any indication from the majority to the contrary—that a defendant could challenge his underlying conviction by appealing the amended judgment. See Manrique, 581 U.S. at 126 (Ginsburg, J., dissenting) (noting that "when a restitution determination has been deferred," a defendant could either separately appeal both the initial and amended judgments "or . . . await the restitution order and then appeal, through a single notice, his conviction, sentence of imprisonment, and restitution order"); see also United States v. Shehadeh, 962 F.3d 1096, 1099–100 (9th Cir. 2020) (noting that "two

We conclude that while "a defendant who wishes to appeal an order imposing restitution in a deferred restitution case must file a notice of appeal from that [later] order," Manrique, 581 U.S. at 125, a defendant wishing to appeal his conviction may do so either initially or after the judgment is amended.[5] Because Lee could have challenged both his underlying conviction *and* sentence by appealing the amended judgment that added restitution, "the conclusion of direct review or the expiration of the time for seeking such review" did not occur until after that amended judgment's issuance in Lee's case. Burton, 549 U.S. at 156–57 (quoting 28 U.S.C. § 2244(d)(1)(A)); see also Jimenez v. Quarterman, 555 U.S. 113, 120 (2009) (holding that a judgment ceased to be "final" for purposes of federal postconviction proceedings after a state court "restore[d] the pendency of the direct appeal" (alteration in original and citation omitted)). Section 2255's limitations period was thus not triggered until April 27, 2022—fourteen days from the amended judgment, when Lee lost the ability to file a direct appeal. Lee's § 2255 motion, filed exactly one year later, is timely.

B.

Resisting this conclusion, the government raises several arguments.

---

justices appear to have read Manrique to allow" this result, while "the majority did not present a contrary view").

[5]In drawing this conclusion, we join every circuit to have considered the question. See United States v. Muzio, 757 F.3d 1243, 1250 (11th Cir. 2014) (holding that while "a judgment imposing a prison sentence and restitution but leaving the specific amount of restitution unsettled is immediately appealable," "if the defendant chooses to do so, he may avoid bifurcation of his appeal by waiting until restitution has been resolved to appeal"); Gonzalez, 792 F.3d at 237 (same); Anthony, 25 F.4th at 803–05 (same); Shehadeh, 962 F.3d at 1099 (holding that "where a district court defers its restitution order, a defendant wishing to appeal his conviction and sentence of imprisonment may enter a notice of appeal *either* within fourteen days following the district court's entry of the custodial sentence, *or* within fourteen days of the entry of the amended judgment" adding restitution).

-8-

First, relying on Manrique, the government argues that, even if Lee's initial deferred-restitution judgment was technically incomplete, it was still an "immediately appealable final judgment[]" from which he could have challenged his conviction, 581 U.S. at 123, and was thus "nonetheless a 'final judgment' for the purposes of § 2255(f)(1)." But this argument wrongly assumes that the definition of "finality" in the context of § 2255(f)(1) is the same as the definition applicable in the context of direct appeal. See Clay, 537 U.S. at 527 (noting that the meaning of "[f]inality . . . depends on context," and distinguishing "appellate review" from "postconviction relief"). For example, § 2255(f)(1) explicitly refers to "*the . . . final*" judgment of conviction, while Manrique itself acknowledges that criminal cases can produce multiple judgments subject to direct appeal. 581 U.S. at 123. In other words, "while there can be multiple judgments in a deferred restitution case for *direct* appeal purposes, only *one* final judgment exists for § 2255(f)(1) purposes."[6] Anthony, 25 F.4th at 802 (emphasis added). The fact that Lee could have challenged his conviction earlier in time does not make the initial judgment the "final" one under § 2255(f)(1); what matters is that he could have chosen to challenge his conviction and sentence later. Nor does it matter that Lee did not—or even could not—challenge his restitution amount in § 2255 proceedings, see United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003) (noting that because restitution does not concern a defendant's custodial sentence, it is not challengeable in § 2255 proceedings), or that we currently view restitution as a civil remedy incorporated into his criminal sentence, see United States v. Thunderhawk, 799 F.3d 1203, 1209 (8th Cir. 2015). For purposes of calculating the statute of limitations on Lee's § 2255 motion, it matters only when his *entire* sentence became final. Here, that occurred when Lee's

---

[6]For this reason, we disagree with the Ninth Circuit's framing of this issue as whether an amendment to a restitution amount "restarts" the limitations period—a framing the government echoes here. See Gilbert, 807 F.3d at 1200. Until "the judgment of conviction becomes final," 28 U.S.C. § 2255(f)(1), the limitations period never began. See Anthony, 25 F.4th at 800–01 ("The issue before us is not whether Anthony's § 2255 period of limitations was extended or restarted—rather, the issue is whether Anthony's one-year period under § 2255 ever started in the first place.").

amended judgment reflected his restitution amount.[7] See Anthony, 25 F.4th at 802 (making this point).

Alternatively, the government argues that, even though restitution is part of a sentence, it is not the kind of meaningful addition that would count toward a judgment's finality in the context of § 2255. The government relies on two lines of our caselaw: cases concerning ministerial changes to a judgment that do not reopen a window for the defendant to take a direct appeal, and cases related to changes to a sentence sufficient to open the door to a second or successive postconviction motion under 28 U.S.C. § 2255(h).

As to the former line of cases, the government points to United States v. Campbell, 971 F.3d 772 (8th Cir. 2020), where we found that an amended judgment in a defendant's case "did not trigger a new time to appeal." Id. at 774. We stressed that "[t]he question is whether the . . . second order[] has disturbed or revised legal rights and obligations which, by [the] prior judgment, had been plainly and properly settled with finality." Id. at 773 (quoting FTC v. Minneapolis – Honeywell Regul. Co., 344 U.S. 206, 212 (1952)). "The only difference between the two judgments" in Campbell "[wa]s the addition of . . . case numbers" for two pending state charges mistakenly omitted in the original judgment, for which the defendant would serve concurrent sentences. Id. at 773. We concluded that the judgment had been

---

[7]The government also cites 18 U.S.C. § 3582(b), which states: "[n]otwithstanding the fact that a sentence to imprisonment can subsequently be" corrected or reduced, "a judgment of conviction that includes such a sentence constitutes a final judgment for all other purposes." 18 U.S.C. § 3582(b). The government suggests that according to this language, an initial deferred-restitution judgment is "a final judgment *for all . . . purposes*," including federal postconviction proceedings. But no one disputes that a deferred-restitution order is a final judgment; rather, the question is whether it is the *particular* final judgment that triggers § 2255's clock in a defendant's case. See Manrique, 581 U.S. at 122–23 (concluding that an amended judgment imposing restitution is not "the *only* final . . . judgment in a deferred restitution case").

"reentered or revised in an immaterial way" and thus did not reopen the window for seeking direct review. Id. at 773–74 (citation omitted). The opposite is the case here: the imposition of the new restitution obligation revised the judgment in a way that itself invited appeal. See Manrique, 581 U.S. at 123. Lee's amended judgment is not like the ministerial error-correction discussed in Campbell.[8]

As to the line of cases concerning successive § 2255 motions, the government relies primarily on Dyab. There, the defendant had been convicted of conspiracy to commit wire fraud and money laundering, and was sentenced to a prison term and $6.4 million in restitution. Dyab, 855 F.3d at 921. Years later, upon the government's motion, the district court amended Dyab's judgment to update restitution payees' addresses and "reflect that one of Dyab's co-conspirators . . . was jointly and severally liable for a portion of Dyab's restitution obligation." Id. In response, Dyab filed a § 2255 motion—his third such motion seeking to vacate the same sentence—in which he argued in part that he was innocent of his money laundering charge. Id. We concluded that Dyab's motion was a prohibited "second or successive" motion under 28 U.S.C. § 2255(h). Id. at 923–24. Recognizing that a "resentencing" that leads to a "new judgment" can invite a postconviction challenge to "at least some aspects of that new judgment," we also said that "[n]ot every change

---

[8]The government also relies on Byers v. United States, 561 F.3d 832, 835 (8th Cir. 2009), where the "parties . . . agree[d]" that a sentence modification under Federal Rule of Criminal Procedure 35(b), made years after the judgment of conviction had become final, did not redefine the final "judgment of conviction" for purposes of § 2255(f)'s limitations period. But unlike mandatory orders of restitution under 18 U.S.C. § 3663A, sentence modifications under Rule 35 are entirely discretionary and ordinarily not subject to appeal. See United States v. Haskins, 479 F.3d 955, 957 (8th Cir. 2007) ("This court lacks jurisdiction . . . to hear a defendant's appeal of the district court's ruling on a Rule 35(b) motion."); see also United States v. Sykes, 356 F.3d 863, 865 (8th Cir. 2004) ("Sykes also contends the district court erred by not further reducing his sentence based on the government's Rule 35(b) motion. Absent an unconstitutional motive, the extent to which a district court exercises its discretionary authority to depart downward is not subject to review."). Modifications under Rule 35(b) are not similar to amended judgments in deferred-restitution cases and do not bear on the question in Lee's case.

-11-

to a judgment results in a new sentence or judgment that wipes clean the slate of post-conviction motions previously filed." Id. at 923 (quoting Magwood v. Patterson, 561 U.S. 320, 331, 342, 342 n.17 (2010)). We noted that "[f]ixing typographical errors and the like does not substantively alter a prisoner's sentence, so a § 2255 motion filed after such a correction is still a challenge to the original judgment." Id. On this view, we held that the 2014 amendments to Dyab's judgment "did not result in a new sentence or judgment," because "[t]here was no substantive proceeding that adjudicated Dyab's guilt or determined the appropriate punishment," and "[t]he court did not alter the amount of Dyab's restitution obligation or otherwise change Dyab's sanction." Id. at 923. Merely "updat[ing] the addresses" for payees and "reflect[ing]" that a coconspirator was jointly and severally liable was "not sufficient to create a new sentence or judgment that would permit Dyab to file a successive § 2255 motion." Id. at 923–24.

The government reads Dyab to hold that only "plenary resentencings" create sufficiently material changes to a judgment to warrant a second or successive § 2255 motion. And because amended judgments in deferred-restitution cases are not plenary resentencings, the government argues, they do not change a sentence materially enough to invite a successive § 2255 motion, and thus they also do not affect the original judgment's finality under § 2255(f)(1).

This argument fails for several reasons. For one, by relying on Dyab, the government again errs in attempting to define finality under § 2255(f)(1) by borrowing precedent from another context. The question in Lee's case is not whether an amended judgment imposing restitution is a *new* sentence or judgment under § 2255(h); the question is whether it is the *final* version of the original judgment. 28 U.S.C. § 2255(f)(1). Dyab does not address this question.[9]

---

[9]In fact, we had the opportunity to address § 2255(f) in Dyab and declined to do so: there, the district court dismissed Dyab's § 2255 motion *both* because it was successive under § 2255(h) *and* because it was untimely under § 2255(f), and the district court subsequently granted a certificate of appealability on both issues. See

And even if <u>Dyab</u> bore on the question of finality in Lee's case, it would not resolve it. Contrary to the government's contention, neither <u>Dyab</u> nor our other precedent holds that *only* a plenary resentencing proceeding can produce a new sentence or judgment susceptible to a successive § 2255 motion. <u>See</u> <u>id.</u> at 923. Rather, we have consistently framed our holdings in the negative, determining that ministerial changes to a sentence *fail* to create a new judgment sufficient to justify a second or successive motion.[10] <u>See</u> <u>id.</u>; <u>see also</u> <u>United States v. Brown</u>, 915 F.3d 1200, 1202 (8th Cir. 2019) (holding successive motion was prohibited following a correction of a clerical error in the judgment); <u>Gonzalez</u>, 792 F.3d at 236 ("Restitution is a serious component of criminal punishment, and calculating the restitution amount is hardly ministerial."). We have said nothing about where a new restitution obligation falls on this spectrum, other than to note that such a circumstance could meaningfully alter the analysis. Indeed, in <u>Dyab</u>, we held that the amended judgment did not create a "new sentence or judgment" in part because it "did not alter the amount of Dyab's restitution obligation or otherwise change Dyab's sanction."[11] 855 F.3d at 923. Of course, the opposite is true in Lee's case.

Finally, the government argues that adopting Lee's reading of § 2255(f)(1) would allow defendants to unfairly benefit from the "procedural flexibility" afforded to crime victims in restitution cases and would upset notions of finality undergirding the rules surrounding postconviction relief. True, offenses involving restitution may involve delay. <u>See</u> 18 U.S.C. § 3664(d)(5) (allowing court to wait up to 90 days in

---

<u>id.</u> at 921. We affirmed only on the ground that the amendment did not allow a successive motion under § 2255(h), and we did not address § 2255(f).

[10]Specifically, we contrasted more significant alterations to a sentence with sentence reductions under 18 U.S.C. § 3582(c) and typographical error corrections under Criminal Rule 36. <u>Id.</u>

[11]Contrary to Lee's situation, Dyab's restitution obligation was changed by joining a new defendant who was jointly and severally liable for the amount—if anything, a *reduction* in Dyab's payment obligation. <u>Dyab</u>, 855 F.3d at 923–24.

determining restitution amount "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing"); see also Dolan v. United States, 560 U.S. 605, 608 (2010) (discussing court's ability to impose restitution after 90-day deadline "at least where, as here, the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount"); United States v. Carneal, 91 F.4th 903, 906 n.2 (8th Cir. 2024) (discussing Dolan and noting that "a delay in ordering restitution might . . . prejudice a defendant and threaten his due process rights" (alteration in original) (quoting United States v. Zaic, 744 F.3d 1040, 1043 (8th Cir. 2014))). But any delay falls within Congress's control or a victim's control, not a defendant's control. And there is no reason to strain a different interpretation of § 2255(f)(1) in restitution cases merely because of the potential for uncertainty as to the full extent of punishment a defendant will ultimately face. See Anthony, 25 F.4th at 802 n.11 ("We recognize that our ruling could lead to delays in federal habeas review. But even though AEDPA 'seeks to eliminate delays in the federal habeas review process . . . [i]t did not seek to end every possible delay at all costs.'" (alterations in original) (quoting Holland v. Florida, 560 U.S. 631, 648, 649 (2010))).

## III.

We hold that Lee's "judgment of conviction bec[ame] final" under § 2255(f)(1) fourteen days after it was amended to add deferred restitution. His motion is timely, and we reverse and remand.

_____