16-738-cr (L); 16-2380-pr (L)
United States v. Rutigliano; Lesniewski v. United States

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of May, two thousand seventeen.

PRESENT: REENA RAGGI,
               DENNY CHIN,
               SUSAN L. CARNEY,
                   *Circuit Judges*.

------------------------------------------------------------------------

UNITED STATES OF AMERICA,
               *Appellee*,

                   v.

JOSEPH RUTIGLIANO, PETER J. LESNIEWSKI,
               *Defendants-Appellants*,

PETER J. AJEMIAN, MARIA RUSIN, GREGORY NOONE, REGINA WALSH, SHARON FALLOON, GARY SATIN, STEVEN GAGLIANO, RICHARD EHRLINGER, BRIAN DELGIORNO, PHILIP PULSONETTI, GREGORY BIANCHINI, FRANK PLAIA, AKA "FRANKLIN PLAIA," MICHAEL DASARO, KARL BRITTEL, KEVIN NUGENT, GARY SUPPER, THOMAS DELALLA, MICHAEL STAVOLA, MARIE BARAN,
               *Defendants*.

Nos. 16-738-cr (L),
16-845-cr (Con),

1

---------------------------------------------------------------------
PETER J. LESNIEWSKI, PETER J. AJEMIAN,
JOSEPH RUTIGLIANO,

        *Petitioners-Appellants*,

                     v.

UNITED STATES OF AMERICA,

        *Respondent-Appellee.*[*]

Nos.   16-2380-pr (L),
       16-2095-cr (Con),
       16-2534-pr (Con)

---------------------------------------------------------------------

| | |
|---|---|
| APPEARING FOR APPELLANTS: | JOSEPH W. RYAN, JR., Law Offices of Joseph W. Ryan, Jr., Melville, New York, *for* Joseph Rutigliano. |
| | THOMAS ANTHONY DURKIN, Durkin & Roberts, Chicago, Illinois (John D. Cline, Law Office of John D. Cline, San Francisco, California, *on the brief*), *for* Peter J. Lesniewski. |
| | SEAN M. MAHER, The Law Offices of Sean M. Maher, PLLC, New York, New York, *for* Peter J. Ajemian. |
| APPEARING FOR APPELLEE: | DANIEL B. TEHRANI, Assistant United States Attorney (Karl Metzner, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York. |

Appeal from orders of the United States District Court for the Southern District of New York (Victor Marrero, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the final orders entered on March 4, 2016, and June 20, 2016, are AFFIRMED.

---

[*] The Clerk of Court is directed to amend the case captions as set forth above.

Defendants Peter J. Ajemian and Peter J. Lesniewski, former orthopedic physicians, and Joseph Rutigliano, a former Long Island Rail Road ("LIRR") conductor and union local president, were convicted, based on a guilty plea (Ajemian) and a jury verdict (Lesniewski and Rutigliano), of multiple counts of substantive and conspiratorial mail, wire, and health care fraud, *see* 18 U.S.C. §§ 371, 1341, 1343, 1347, 1349, in connection with a wide-ranging scheme to defraud the United States Railroad Retirement Board ("RRB") by submitting fraudulent applications for disability pensions on behalf of LIRR employees. Rutigliano was also convicted of making false statements in his own disability recertification forms filed with the RRB. *See* 18 U.S.C. § 1001. The district court sentenced each defendant to a below-Guidelines prison term of 96 months and to three years' supervised release, and ordered restitution in amounts ranging from approximately 70 to 116 million dollars.

On appeal, Lesniewski and Rutigliano challenge the district court's denial of their Fed. R. Crim. P. 33 motions for a new trial, and all defendants challenge the denial of their 28 U.S.C. § 2255 petitions seeking resentencing.[1] We assume the parties' familiarity with the facts and record of prior proceedings—including our prior opinion and summary order—which we reference only as necessary to explain our decision to

---

[1] The district court limited the certificates of appealability under § 2255 to the question of whether defendants were entitled to resentencing as to their prison terms. Defendants' argument that they are entitled to a reduction in restitution is the subject of a separate appeal not before this panel. *See United States v. Rutigliano*, Nos. 16-3754, 16-3858, 16-3894, 16-3898, 16-3979 (2d Cir.), *appeals docketed* November 4, 2016, November 15, 2016, November 17, 2016, and November 29, 2016.

affirm.  *See United States v. Rutigliano*, 790 F.3d 389 (2d Cir. 2015); *United States v. Rutigliano*, 614 F. App'x 542 (2d Cir. 2015).

1.     Rule 33 Motions for a New Trial

Under Fed. R. Crim. P. 33(a), a district court may, upon defense motion, "vacate any judgment and grant a new trial if the interest of justice so requires."   The motion must demonstrate that the evidence relied upon (1) is newly discovered, (2) was obtained through the exercise of due diligence, (3) is material, (4) is not merely cumulative or impeaching, and (5) would likely result in an acquittal.  *See United States v. Persico*, 645 F.3d 85, 109 (2d Cir. 2011).   The government concedes for the purpose of these appeals that Rutigliano's and Lesniewski's Rule 33 motions are premised upon "newly discovered evidence" and were therefore timely filed.  *See* Fed. R. Crim. P. 33(b)(1)–(2).   To grant a Rule 33 motion, the district court must harbor a "real concern that an innocent person may have been convicted" such that "it would be a manifest injustice to let the guilty verdict stand."  *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) (citations omitted); *see United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (observing that only "exceptional circumstances" will override deference normally accorded jury's evaluation of evidence and determinations of credibility (citation omitted)).   We review the denial of such a motion for abuse of discretion, accepting the district court's factual findings as true so long as they are not clearly erroneous.  *See United States v. McCourty*, 562 F.3d at 475.   We identify no such abuse here.

4

a.      Lesniewski

Lesniewski seeks a new trial based upon the RRB's reinstatement of benefits for a majority of reapplying LIRR annuitants whose disability-pension applications had previously been voided because of their reliance on his allegedly fraudulent diagnoses. Lesniewski argues that such reinstatement indicates that his patients were in fact disabled, and that the fraud was therefore either non-existent or of lesser magnitude than the government had contended at trial.   He argues that the reinstatement of most benefits undermines the prosecution's trial argument that LIRR's disability-pension rate—four times that of the comparable Metro-North Railroad—could be explained only by fraud, rather than by the LIRR employees' legitimate entitlement to disability payments.

The argument fails to demonstrate abuse of discretion in the denial of Rule 33 relief.  As a preliminary matter, the RRB's recent reinstatement of certain disability pensions hardly compels an inference that prior disability applications by the same individuals were meritorious.   More to the point, the reinstatement applications necessarily excluded any documentation from Lesniewski and Ajemian and, thus, do not speak to the fraudulent nature of such documents when they were included in prior applications.   In sum, the inferences to be drawn from the RRB's reinstatement decisions do not plainly favor defendants.   Much less do they evince such exceptional circumstances as would suggest that the jury's guilty verdicts effected a manifest injustice.

In any event, defendants, whose intent to defraud was found proved by the jury, are not relieved of culpability because the claimants whose applications they supported

5

with fraudulent documentation might have received benefits without the assistance of such fraud. The government was not required to prove that disability pensions would have been denied but for the misrepresentations, only that the misrepresentations were material—*i.e.*, that they had a "natural tendency to influence, or [be] capable of influencing" the RRB's disability-pension decisions. *See United States v. Corsey*, 723 F.3d 366, 373 (2d Cir. 2013) (citation omitted). There is no question that Lesniewski's misrepresentations influenced the decisions that were then voided.

To the extent Lesniewski argues that the RRB reinstatement decisions negate the *existence* of fraud—or his fraudulent intent—the government presented overwhelming evidence on that score. Several of Lesniewski's former "patients" testified that his office was well known for fabricating paper trails to support disability applications, and that they were expressly directed to his office for that purpose. Indeed, one witness recounted sending a note to Lesniewski asking for evidence of additional disabilities to increase his chances of qualifying for a pension. The government presented further evidence that, in return for fabricated "narrative" summaries supporting their disabilities, each client paid Lesniewski between $800 and $1,200. Lesniewski was aware that many of these patients were then working and could continue to work. Further, he provided them little or no treatment for the conditions from which he reported they were suffering. Finally, evidence showed that Lesniewski admitted to federal agents that he had included exaggerations in at least 20% of the applications in which he sought to qualify patients for disability pensions.

6

On this record, we cannot conclude that the district court abused its discretion in denying Lesniewski's motion for a new trial.[2]

### b.     Rutigliano

Rutigliano relies on the RRB's reinstatement orders and related testimony by the RRB Inspector General to renew his challenge to the instruction charging the jury that LIRR employees were entitled to disability pensions only if they were either totally disabled or disabled for work in their regular occupation, rather than merely "unable to perform one or more tasks" of their employment, the standard for which defendants advocated.   Rutigliano Br. 7.   On Rutigliano's first appeal, this court rejected the argument that his proposed charge accurately represented the law, and concluded that the instruction delivered by the district court was not erroneous.   *See United States v. Rutigliano*, 790 F.3d at 402.   Under the law of the case doctrine, we must generally adhere to our "own decision at an earlier stage of the litigation."   *United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) (citation omitted).   While "limited exceptions" to this doctrine may be warranted in "compelling" cases based upon the "availability of new evidence," *id.* at 123–24, that is not this case because Rutigliano fails adequately to

---

[2] While we do not understand Rutigliano to raise the same argument in support of his Rule 33 motion, the evidence of his intent to defraud was equally overwhelming.   As to his own fraudulent disability claim, an orthopedist called by the government testified that Rutigliano's purported injuries were dramatically exaggerated or wholly fabricated, and, in one instance, physically impossible.   Trial evidence demonstrated that, while ostensibly retired based upon his total physical disability, Rutigliano frequently played golf and engaged in other physical activities.   As to Rutigliano's complicity in the broader scheme, LIRR employees testified to paying Rutigliano $1,000 to provide narrative summaries in support of their applications for disability, which narratives frequently used strikingly similar "cookie cutter" language to support the applications.

7

explain how the evidence proffered here alters the applicable regulatory standard for occupational disability.

In any event, the argument fails on the merits. The challenged instruction incorporated the applicable regulatory definition of occupational disability: an employee who is "disabled for work in his or her regular railroad occupation because of a permanent physical or mental impairment." 20 C.F.R. § 220.10. Rutigliano's proposed language, which suggests that an employee is entitled to occupational disability if there is a single task that he cannot perform, appears instead in "governing principles" adopted by the Labor-Management Joint Committee on Railroad Retirement. Rutigliano App'x 250. That language, as the RRB Inspector General states in passages upon which Rutigliano relies, does not appear in the applicable agency regulation. Moreover, and in any event, Rutigliano was permitted by the district court to urge this interpretation of the RRB's disability standard in summations.

Accordingly, we affirm the district court's denial of Rutigliano's Rule 33 motion.

2.      Section 2255 Petitions Seeking Resentencing as to Prison Terms

Rutigliano, Lesniewski, and Ajemian all appeal the district court's denial of so much of their § 2255 petitions as sought resentencing as to their terms of imprisonment, arguing that the RRB's reinstatement orders mandate a reduction in the loss figures upon which their Guidelines ranges were premised. In reviewing the district court's findings of fact for clear error and conclusions of law *de novo*, *see Cox v. United States*, 783 F.3d 145, 149 (2d Cir. 2015), we identify no error.

At the outset, we note that, while the district court ultimately addressed the merits of all three defendants' § 2255 petitions, its denial of Ajemian's petition was proper in any event because he was convicted pursuant to a plea agreement wherein he waived his right to appeal or collaterally attack any sentence "within or below the Stipulated Guidelines Range of 121 to 151 months' imprisonment" and including a restitution award less than or equal to $116,500,000. Gov't Add. 5. Because Ajemian was sentenced to 96 months' imprisonment and restitution of $116,500,000, that waiver is valid so long as it was knowing and voluntary. *See, e.g.*, *Garcia-Santos v. United States*, 273 F.3d 506, 507–09 (2d Cir. 2001).

In urging otherwise, Ajemian argues that he did not specifically allocute to the intended-loss figure, and his counsel was ineffective in negotiating his plea. As to the former, the parties had stipulated to a loss amount of $116,500,000, which the government explained represented a conservative estimate of the total value of disability benefits awarded to Ajemian's hundreds of LIRR patients, further discounted for the possibility that some of those patients could have been legitimately disabled. Ajemian provided factual support for that conclusion at sentencing when he agreed that he had prepared disability narratives for "large numbers of Long Island Railroad employees" who were "not in fact disabled," all the while knowing that the RRB would erroneously rely upon them in paying benefits to those employees. Ajemian App'x 85–86. Moreover, Ajemian averred that he was entering his plea voluntarily, that he was guilty, and that no one had threatened or induced him to do so. As to the claim of ineffective counsel, Ajemian provides only conclusory assertions that his counsel was somehow

9

deficient in failing adequately to contest the intended-loss calculations. Accordingly, Ajemian's sentencing challenge is barred by his knowing and voluntary waiver of his appellate rights.

As to the merits, all three defendants' applicable Guidelines ranges were determined under U.S.S.G. § 2B1.1(b), which calculates the offense level for fraud by reference to the monetary value of the "loss" associated therewith. Where the loss amount cannot be identified precisely, a sentencing court can "make a reasonable estimate of the loss," U.S.S.G. § 2B1.1 cmt. n.3(c), and on appeal, that loss determination "is entitled to appropriate deference," *id.* (citing 18 U.S.C. § 3742(e)–(f)). Loss refers to the "greater of actual loss or intended loss," *id.* cmt. n.3(A), where "actual loss" is the "reasonably foreseeable pecuniary harm that resulted from the offense," *id.* cmt. n.3(A)(i), and "intended loss" is the "pecuniary harm that the defendant purposely sought to inflict," even if the harm was "impossible or unlikely to occur," *id.* cmt. n.3(A)(ii). Following these Guidelines here, the district court looked to the amount of loss defendants intended to cause, rather than the lower quantity of loss that actually occurred.

In denying habeas relief, the district court concluded that the RRB's post-trial reinstatement decisions did not diminish the intended-loss figures. The contention that the intended-loss figures were merely "derivative" of actual losses, Ajemian Br. 22, is unsupported by the record. Accordingly, even if the RRB's decision to reinstate many of the voided disability pensions based on non-fraudulent documentation altered the

10

*actual* losses suffered by the agency,[3] the same conclusion does not apply to the *intended* losses, which were premised upon the scope of the harm reasonably foreseeable to defendants from their provision of fraudulent documentation to induce RRB payments that would not have been made if—and indeed were stopped when—the RRB learned that the applications were knowingly false. In sum, because defendants fail to show that the RRB's reinstatement decisions would have altered their applicable Guidelines ranges, we affirm the district court's denial of defendants' § 2255 petitions insofar as they sought resentencing for a reduction in their prison terms.

3.    Conclusion

We have considered defendants' remaining arguments and conclude that they are without merit. Accordingly, the orders of the district court are AFFIRMED. Rutigliano's motion for bail pending appeal is DENIED as moot.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

[3] We express no view on whether the RRB reinstatement decisions reduced the actual losses reflected in defendants' restitution orders, a matter not before this panel.